DA 13-0099

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 309

CR WEAVER,

       Plaintiff,

  v.

TRI-COUNTY IMPLEMENT, INC.,
and TAMI CHRISTENSEN,

       Defendants.

TRI-COUNTY IMPLEMENT, INC.
and TAMI CHRISTENSEN,

       Counter Plaintiffs, Third Party Plaintiffs and Appellees,

  v.

CR WEAVER,

       Counter Defendant and Appellant.

MIKART TRANSPORT, LLC and
MICHAEL ROBERT SMITH,

       Third Party Defendants.

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and For the County of Richland, Cause No. DV 11-156
                Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           William L. Managhan; Managhan Law Firm; Kalispell, Montana

For Appellees:

    Ben T. Sather, Eric E. Holm; Sather & Holm, PLLC; Billings, Montana

Submitted on Briefs: September 26, 2013

Decided: October 22, 2013

Filed:

_____
                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     C.R. Weaver (Weaver) appeals from the Montana Seventh Judicial District Court's order granting summary judgment in favor of Tri-County Implement, Inc. (Tri-County) and Tami Christensen,[1] and imposing joint and several liability on Weaver in his individual capacity. We reverse the imposition of personal liability on Weaver, addressing the following issue:

¶2     *Did the District Court err in holding Weaver jointly and severally liable for the obligations incurred on behalf of Mikart Transport, LLC?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     In January of 2011 Weaver formed Mikart Transport, LLC (Mikart), a domestic limited liability company. At that time, the Articles of Organization named Weaver and Michael Smith (Smith) as members or managers. Smith was named as Mikart's registered agent.

¶4     Tri-County is a small business located in Sidney, specializing in sales and service of farm and industrial machinery, trucks, and trailers. During March of 2011, Smith submitted a credit application with Tri-County to open a line of credit on behalf of Mikart, which Tri-County approved. Smith represented on the credit application that he was the "owner" of Mikart. The application contained a provision requiring reimbursement of attorney fees and costs incurred by Tri-County in any court action necessary to collect amounts owed.

---

[1] Tami Christensen is an owner of Tri-County and performs its bookkeeping. She is named in the pleadings as a co-defendant, co-counter plaintiff, and co-third party plaintiff with Tri-County. References herein to "Tri-County" include Christensen.

¶5 On March 31, 2011, Smith requested that Tri-County perform service work to a Freightliner truck under Mikart's account. Tri-County provided parts, service, and labor in the amount of $12,252.74. Payments totaling $6,980.84 were made toward this debt, leaving $5,271.90 unpaid.

¶6 On April 19, 2011, Smith requested that Tri-County mount a tank on a 1991 Volvo semi-truck under Mikart's account. Tri-County accepted the project and created a service order. It ordered the specified tank and outsourced the necessary welding work to Niehenke Welding, Inc. Tri-County issued an invoice for the work performed on the Volvo in the amount of $1,086.00, which was not paid. As a result, Tri-County refused to release the Volvo from its possession pursuant to its asserted agisters' lien on the vehicle. *See* § 71-3-1201(2)(a), MCA. The Volvo is titled in Weaver's name.

¶7 Proceeding *pro se*, Weaver filed a complaint against Tri-County on December 12, 2011, alleging that payments he and his daughter had made to Tri-County were misapplied and that his Volvo was being wrongfully held.[2] He argued that in so doing, Tri-County had committed "fraud, misrepresentation, unethical business practices and violations of good faith and fair dealings." In response, Tri-County filed an answer and counterclaim against Weaver, as well as third-party complaints against Mikart and Smith, demanding payment in full for the work that had been performed on the Freightliner and Volvo. Weaver then filed an answer to the counterclaim and an answer to the third-party

---

[2] Weaver initially claimed that an agreement had been reached between his daughter and Tri-County requiring application of payments he had arranged to the Volvo bill. However, the District Court concluded that Weaver had failed to meet his responsive burden on summary judgment to lay a factual foundation for his theories, and we conclude this claim was properly rejected for this reason.

complaint against Mikart. The District Court struck the latter on procedural grounds and also noted that Weaver was not licensed to practice law and could not personally represent Mikart. Smith failed to answer or otherwise appear, so the District Court entered default judgment against him.

¶8 Tri-County moved for summary judgment on its counterclaim against Weaver, its third-party complaint against Mikart, and Weaver's complaint against Tri-County. The District Court granted summary judgment in favor of Tri-County on each count, finding that no dispute existed over the fact that Mikart incurred, and then failed to pay, the $6,357.90 owing to Tri-County for the work it had performed. Consequently, Tri-County had claimed a valid agisters' lien against the Volvo and was entitled to compensation for the Freightliner pursuant to the credit agreement. The District Court entered judgment against Mikart, ordering it to pay $1,086.00 for work performed on the Volvo and $5,271.90 for parts, service, and work performed on the Freightliner. The District Court further awarded Tri-County $21,180.34 in attorney fees and costs based on the fee provision of the credit application. Finally, the District Court held Mikart, Smith, and Weaver jointly and severally liable for these amounts. Weaver appeals only the District Court's imposition of personal liability on him.

## STANDARD OF REVIEW

¶9 We review de novo a district court's ruling on a motion for summary judgment, performing the same analysis as the district court pursuant to Rule 56 of the Montana Rules of Civil Procedure. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186. Summary judgment is appropriate only if the moving party demonstrates

5

the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 11, 366 Mont. 285, 291 P.3d 1082. A district court's determination that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a legal conclusion that we review for correctness. *Turner*, ¶ 11.

## DISCUSSION

¶10 ***Did the District Court err in holding Weaver jointly and severally liable for the obligations incurred on behalf Mikart Transport, LLC?***

¶11 Weaver does not challenge the District Court's determination that no genuine issue of material fact exists that would preclude summary judgment. Rather, Weaver maintains that "[t]he District Court erred by ordering [him] jointly and severally liable with Smith and Mikart" because he never assumed legal responsibility for their actions. He argues that, absent some proof of his own wrongdoing, he cannot be held liable under a service contract that "(1) is in someone else's name; (2) was applied for by someone else; and (3) involved work on two vehicles that was requested by someone else."

¶12 Montana's statute governing the liability of members or managers of a limited liability company (LLC) to third parties provides in pertinent part:

> [A] person who is a member or manager, or both, of a limited liability company is not liable, solely by reason of being a member or manager, or both, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company.

6

Section 35-8-304(1), MCA. "[T]his Court has recognized [LLCs] as legal entities distinct from their members, with obligations separate from their members." *White v. Longley*, 2010 MT 254, ¶ 34, 358 Mont. 268, 244 P.3d 753 (citing *Ioerger v. Reiner*, 2005 MT 155, ¶ 20, 327 Mont. 424, 114 P.3d 1028). LLCs provide their members and managers with "a corporate-styled liability shield . . . ." *White*, ¶ 34 (citing § 35-8-101, MCA, *Official Comments*). However, this liability shield is not absolute and does not provide immunity to a member for his own wrongful conduct. *White*, ¶ 37.

¶13 In *White*, Steve and Donna White purchased property near Troy with the intent to build a retirement home thereon. *White*, ¶ 2. The Whites contacted Tom Longley in Washington State about performing the construction work, which he agreed to do in his capacity as general manager of Castle Homes, LLC. *White*, ¶ 2. From the outset, Longley attempted to deceive the Whites about his credentials, his experience, and the work he would perform, eventually resulting in the construction of a home "so substandard that it could not reasonably be repaired" and that "the Whites would have to tear down . . . ." *White*, ¶¶ 26-27, 51. We noted:

> It is clear from the facts that Longley knowingly made any number of material representations about the Whites' house project that induced them to trust him and to invest substantial sums of money with him. Longley knew exactly what was going on. He knew the limits of his own qualifications and abilities. He knew the deficiencies in the project because they were obvious to any experienced contractor and because his crew foreman Ellis told him. There is abundant evidence to support the District Court's findings and conclusions regarding constructive fraud.

7

*White*, ¶ 29. The district court held Longley jointly and severally liable with Castle Homes, LLC for damages incurred by the Whites throughout the disastrous building process. *White*, ¶¶ 38-39.

¶14 On appeal, Longley argued that Montana's Limited Liability Company Act provides LLC members complete liability protection for actions taken on behalf of that LLC. *White*, ¶ 32. We summarily rejected Longley's position, explaining that Montana law "does not offer blanket protection from liability to a member of an LLC for the member's own conduct . . . ." *White*, ¶ 37. Rather, § 35-8-304, MCA, "allow[s] personal liability against a member or manager of an LLC based upon contract or tort if the member or manager would be liable if acting in an individual capacity." *White*, ¶ 37 (citing § 35-8-304, MCA, *Official Comments*). We concluded that Longley's individual misconduct subjected him to liability under both contract and tort, which "remove[d] any protection from liability that Longley might otherwise have based upon the organization of Castle Homes as a limited liability company." *White*, ¶ 38.

¶15 Turning to the case before us, our holding in *White* establishes that Weaver's liability as a member depends on whether he engaged in conduct that would give rise to contract or tort liability if he were acting in his individual capacity. In other words, did Weaver personally breach a contract obligation or commit a tort with regard to Tri-County? As the Official Comments to § 35-8-304, MCA, explain, "[a] member or manager, as an agent of the company, is not liable for the debts, obligations, and liabilities of the company simply because of the agency."

8

¶16   The District Court concluded that "Weaver is not afforded the protections of § 35-8-304, MCA" based on the following facts: "the Volvo at issue was owned by Weaver[;] Weaver failed to make payment either on his own behalf or on behalf of Mikart Transport, LCC[;] [and] Weaver personally brought this action against Tri-County." Tri-County offers these points from the District Court's analysis and adds that Weaver is personally liable because both Weaver and Smith entered into transactions on Mikart's behalf; Weaver knew about and never objected to any of the transactions; and Weaver personally arranged some payments but then refused to make others.

¶17   Even taking these factual assertions as true, they do not establish a basis for imposing individual liability on Weaver in contract or tort. Turning first to a contract analysis, Weaver correctly argues that the agreements in this case for the work performed on the two trucks were solely between Tri-County and Mikart. Weaver did not guarantee Mikart's payments or make any other promises. "A contract is an agreement to do or not to do a certain thing." Section 28-2-101, MCA. Without an agreement between Weaver and Tri-County regarding the vehicle repairs, individual liability for breach of contract by Weaver does not lie. It is immaterial that Weaver held title to the Volvo, sued Tri-County, knew about Mikart's transactions and failed to object, or arranged to make some payments to Tri-County. Again, an LLC's "obligations are separate from its members." *Ioerger*, ¶ 20. It is critical here to distinguish between Mikart's failure to pay its own debts on the one hand, and Weaver's failure to pay Mikart's debts, on the other, when he had no contractual obligation to Tri-County to do so. Conflating the two would

9

eviscerate the protection afforded by Montana's Limited Liability Company Act and render the LLC business form superfluous.

¶18    Turning to our tort analysis, Tri-County suggests that failing to impose individual liability on Weaver "would allow an agent to hide behind the LLC so that a victim of wrongful conduct is deprived of compensation if the LLC is insolvent, which is likely the case with Mikart Transport." The key words here are "wrongful conduct." The allegation that Mikart may be unable to pay its debts does not, by itself, amount to wrongful conduct that imposes liability on Weaver. As with the contract analysis, it is also immaterial that Weaver held title to the Volvo, sued Tri-County, knew about Mikart's transactions and failed to object, or arranged for some payments to be made. Unlike the constructive fraud claim at issue in *White*, Weaver's conduct in this case does not constitute an actionable tort. If a member or manager operates an LLC as an empty shell to perpetuate fraud and avoid personal responsibility, that situation would be different, but those are not the facts here. Apart from agency theory, which § 35-8-304, MCA, clearly rejects as a basis of member or manager liability, there is no basis on which to hold Weaver individually liable for the obligations of Mikart to Tri-County.

¶19    We conclude that the District Court erred in holding Weaver jointly and severally liable with Smith and Mikart for the work performed on the two vehicles, and for the attorney fees and costs assessed pursuant to the fee provision of the credit application, and therefore reverse the same. The remainder of the judgment is unaffected by reversal of this issue. We remand for entry of an amended judgment consistent herewith.

/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS